3-12-0628, Pamela K. Shelton, found by Niall Williamson. This is OSF Saint Francis Medical Center, amicably by Abby Clark. Mr. Williamson? Thank you, Your Honor. Let me try and focus to the right. I'm Niall Williamson. I represent the plaintiff, Pamela Shelton. In this case, the summary judgment was granted by Judge Dubicki. I know you've read the briefs. I'm not going to prolong the facts simply by stating that the plaintiff was a registered nurse, a floor nurse at OSF, who sustained a work-related injury, torn meniscus, was off work for some time. And the events which led to the lawsuit primarily occurred in the summer of 2008. I would like to just briefly discuss the events of how the first trial began and ended. The original complaint attempted to consolidate the claim for retaliatory discharge and retaliatory failure to recall slash rehire. Defense counsel didn't like that. I don't think the trial court liked it either because once the trial began, and it was made clear to me when I reread the statement of facts that it didn't refer to both types of claims, I then said in the opening statement to the jury that this case is actually being done in the alternative. Ladies and gentlemen, at that point the defense counsel moved for mistrial, was subsequently granted. And it's my recollection, although I haven't looked at the particular transcript prior immediately this morning, that the argument at the time of the mistrial was essentially the same argument, and that is that the plaintiff has made a judicial admission she was terminated, therefore she can't pursue the claim for retaliatory failure to recall or rehire. I may be incorrect in that, but I think that was the basis for the motion for mistrial. So the plaintiff then files a second amended complaint limiting her claim to the retaliatory failure to recall slash rehire. And frankly, the reason we did that, I tried to cite it in my brief, the plaintiff at some point in time in the fall of 2008 could have performed her registered nurse duties completely. Her knee problems had resolved by that time. But in the summer of 2008, first of all, her own physician released her without restriction, but OSF's physician released her with a 20-pound weight restriction. And she did make a judicial admission, which you're going to hear that term several times in this argument. She did make a judicial admission in her deposition to the effect that could you go back to your job in the summer of 2008? I think she said not without accommodations or adoptions. Maybe she used that word, adaptations. So she made that judicial admission, and that put us in a position effectively where she was saying she really couldn't have performed the job at the time she was released by her own doctor. So we chose to pursue the second cause of action with the alternative cause of action, which is failure to recall or rehire. And I know that distinction has been made in several cases. I'll get to that in a moment. I'm not sure I think that's an appropriate distinction at all. The web court's reference to a seasonal employee versus a laid-off regular employee, I'm not sure that that's case law that's been adequately developed. And I think that this court in this opinion probably needs to develop it further. I don't think a panel of this court has ever ruled on this issue. The Illinois Supreme Court has never ruled on this issue. And we're now dealing with 20-year-old case law that's really not adequately explained as to why one type of person can pursue a right to recall case versus another type of person. A seasonal employee, for instance, would have a failure to recall, and then a regular employee would have a failure to be rehired. I think there's a dichotomy there, and it doesn't need to be there. In any event, we now are, before this court, on a very narrow issue. The defendant brought two issues up in its summary judgment. They said, well, the plaintiff has admitted she was terminated, and for that reason she can't pursue the failure to recall slash recall case because that's what the case law says. And they also argued that the plaintiff's workers' comp council later on in the summer, I think at the end of July of 2008, writes a letter, which is in the record, saying she's moved to Yorkville, she's resigned. Now, that was covered by the plaintiff in the response to the summary judgment by her own affidavit. She didn't authorize him to say that. That wasn't the factual case, and all the other evidence in the case was clearly contrary to that suggestion. She'd resigned. The trial court did not rule on the resignation issue. The only reason I am bringing it up, because it will raise a question later on, the parties are having constant communication throughout the summer of 2008 going into the fall of 2008. That's just one more element of their communication about Ms. Shelton's ongoing status as an employee. They never took her badge. They never took her parking permit. They're constantly talking to her about going back to the work sharing program, and she's constantly talking to them about going to other hospitals. I'm now in Yorkville. Can I go to St. Anthony's Hospital? Can I go to a hospital close to Ottawa? You have hospitals all over the state of Illinois. I'd like a job closer to where I'm now employed. But she never refused to return to Peoria either, and that's undisputed in the record. So now we get back to the question of the court granting the summary judgment on this issue of her being fired. Now, the mea culpa will come quickly. You can see in the brief we filed two consecutive complaints under oath. She was fired. The letter on June 2nd says you are fired as of June 18th. It's clear to everyone. I'm not going to stand before you and say we didn't do that. The trial judge was well aware of that fact. The trial judge simply ignored that aspect of it, ignored the judicial admission that defense counsel made when they said it was a mistake. We retracted the firing. And the principal reason they retracted the firing, they had a rule that if an employee was off work for a particular period of time, they gave them a 30-day window. If they didn't come back to work, they terminated them. But they didn't apply that rule to people on workers' comp. And the two employees, I think, that formulated the June 2nd letter were thereafter told of their mistake, and they rectified the mistake. You're not terminated at this point. So there's also an exhibit in there. Couldn't you have plead that? Pardon me? Couldn't you have? I thought I did plead it. And I'll be happy to point out my own deficiencies in the pleading process if it isn't clear, because I just reread the complaint again this morning. And I thought it was clear that the exhibit... Perhaps I should, too, then. Pardon me? Perhaps I should, too, then. So your position is you did plead those facts. That's correct, Your Honor. First terminated, and then the termination was... One of the reasons we pled the facts is we included Ms. Shelton's June 27th letter to OSF. And she goes through all of these things. She used the word, honor my termination. At the end of the letter, she says, you've improperly terminated. You've retracted. She even referred to the fact that it's been a retracted termination, and you won't give me a full-time job. So when I say I pled that, I'm including the fact that that exhibit is included in the amended complaint, which is a factual basis for the summary judgment. So I don't want to mislead you in that regard. There may not be specific reference in the other accounts of the complaint other than Ms. Shelton's letter. So we're now in a position where, in my mind, the court's committed, for whatever reason, error that's totally contrary to the law. And that is they've said that the plaintiff made a judicial admission. Well, yes, she made a judicial admission on every fact she's alleged in both the original amended complaint. But the judicial admission relating to her termination was, in fact, explained by the defendant itself. The defendant can't now come before the court and say, well, we admitted before the trial court that the June 2nd firing letter, termination letter, was a mistake. It was retracted after June 18, yet we're now going to tell the court that it's a judicial admission. Therefore, the plaintiff can't proceed with her case. I mean, it's going full circle, Your Honors. She was officially terminated before you filed the lawsuit, wasn't she? I don't think so. I don't think so. I don't think that's ever been done. If you'll see in the brief, Your Honor, she's even being offered group insurance up until October of 2008, which they only offer to regular employees. And, again, that's undisputed in the record. She's given that statement in her affidavit. So I think that after October of 2008, everybody forgets about this, the lawsuit starts, and I don't think she's ever been given any further formal statement from OSF that you're not an employee, other than the fact we have the lawsuit going now for four years. I thought she was terminated effective July 25th. That is when they say, Judge, we are honoring the resignation that her lawyer sent. Her lawyer sends a letter saying she's moved to Yorkville. Therefore, she's resigned. And as I said earlier, she explains that, that he did not have my authority to do that. Even when that letter is sent, Your Honor, there's communication back and forth between the plaintiff and various OSF employees about what job can I perform. So I don't think she has ever been, her employment relationship has never been completely severed with OSF, even as we stand here today. Now, there may be further evidence, and I don't know that I can give you an exact point in time where anybody's going to say that her relationship has been terminated. It's conceivable it might. I don't think it's really an issue in the lawsuit at this point, Your Judge, because the summary judgment is based solely on the original statement by the plaintiff that the June 2nd termination letter stops her right to pursue a failure to recall or rehire case. That is the limit of the trial court's ruling at this point in time. I would like to point out for you that just, if I haven't made it clear, the June 2nd, 2008 letter says, and I quote, the 30-day period will end June 18, 2008, meaning the time frame in which you must get another job or you're terminated. So that's the language in the termination letter. Now, after June 18, events occur whereby OSF admits it's a mistake, and they take actions to indicate they know it's a mistake. They take actions to further sever the relationship, just as Judge McDade pointed out, that they then say later on in the summer, oh, we now accept your resignation. So it's an ongoing process between the parties, and certainly OSF at some points in time wants to take actions to terminate the relationship. They've got an attorney in the workers' comp case. His statements are quoted in the brief, Mr. Newland. He's making statements about the employment relationship, about my client, well after June 18 of 2008. And again, I don't want to read portions of the brief, but I know I saw it again this morning where Mr. Newland's letter is specifically referenced as to his interpretation of Ms. Shelton's employment status at that point in time. So this isn't, and again, that's on page 15 of the brief, and the letter from Newland was on July 16, 2008. And number one, and I think this is an exact quote from Mr. Newland, OSF St. Francis Medical Center has not terminated the petitioner from employment. Two, the petitioner has a position available in the restricted worker program. These are, again, I don't want to keep using the word judicial admission because it's been overused in the arguments in this case. This is a judicial admission by their workers' comp attorney as to her employment status on July 16, 2008. So OSF's a large company, and different employees are saying and doing different things at various times, some of which are contradictory. But this employment relationship had not been terminated in the summer or fall of 2008. My client's entitled to pursue the recall or rehire case, and I would encourage the court to further delineate what the Webb case says and the Klinker case say about the distinction between a regular employee and a seasonal employee limiting their ability to pursue those two types of cases. I don't think that's a proper way to pursue these types of claims. I think a regular employee should be able to sue for either failure to recall or failure to rehire. I don't think drawing lines in the definition of what those two terms mean is a reasonably judicial way of handling this type of case. Unless the court has any questions, I'll stop. I have two for you. First, I understand your explanation of how the first mistrial occurred, but is it relevant to what we need to decide here with respect to the motion? No, it's not relevant, but there was discussion about it. There was discussion about it in the court's opinion. When I reread that this morning, I thought maybe I should give a further explanation. Secondly, the weakness in the case law that you're asking us to address is currently there's two categories. One is a recalled employee and one is a rehired employee, and you're asking us to go out on a limb and say there's no distinction between that we don't view a distinction between those two. You're saying going out on a limb. I think that a more temperate way of expressing that would be that this court should further define if that type of distinction needs to exist. This is a 20-year-old case. I think it's 1992 as McWeb, and then the Klinker case is 02. I don't think that distinction is proper under the current circumstances of that law. And you are not the first person to try and temper my language. But thank you for your argument. Thank you, Your Honor. Ms. Clark? Thank you. May it please the Court? Your Honors, in preparing OSF's written brief, what I attempted to do there was to give you a clear, succinct explanation of OSF's positions here, give you some authority that supports OSF's position and authority that supports the trial court's decision here. I feel that I've done that in the brief, and I feel that the brief has all of the information that you need. So I'm not going to just regurgitate to you here today. I have a brief argument prepared, but if there are questions that you all have, I would be happy to answer those right up front. Well, what about paragraph 10 of the amended complaint? Do you think that alleges enough facts to clarify first she was terminated and then the termination was rescinded? No, Your Honor, I don't think that it does. I think that what the plaintiff has done here is come out, and she's made very clear, very deliberate, very unequivocal statements that I was terminated. And I don't think that even using paragraph 10, you get away from the fact that there has never been any dispute between the parties until the morning of the summary judgment hearing that the plaintiff's employment with OSF was terminated. There's a question of date. Mr. Williamson thinks it happens on one date. We have processed termination of the employment as of July 25th. So there is some disagreement as to what day that became final, but there has never been, Your Honor, a dispute as to whether the employment was actually terminated. But if we use that July 25th date, the argument is she resigned so that she wasn't involuntarily terminated. Is that a distinction we need to focus on? I don't think that it is, Your Honor, because I think what the web case looks at when we're looking at these three categories that allow plaintiffs to fit into whichever set of particular facts fits their situation, what you're looking at there is you're looking for an affirmative action on behalf of the employer. Okay, it ended. Exactly, it ended. So once the employer has taken an affirmative action to sever that relationship, that's when under the web case and the way it's been explained and articulated, that's when the plaintiff now falls into a retaliatory discharge case. Those three categories that the web case articulates do explain that seasonal employees are a failure to rehire, the case that Mr. Williamson is trying to advance about recall, and then the retaliatory discharge. And so once that affirmative action has taken place, we fall into the retaliatory discharge camp. That's the only cause of action that would be available under this set of facts that we see today. Thank you. As I read Mr. Newland's letter, what he was saying was that if you don't report or let us know that you're coming back, that we are going to interpret that as job abandonment and that you will be terminated on that basis. That's what he said? Yes. And then when OSF processed it, you processed it as a termination for job abandonment? Yes. Your Honor, I don't know exactly what the phraseology is, but it definitely was a termination of employment. They didn't want to put a black mark on the plaintiff's record to make it look negative because it didn't have any malicious intent behind it. So I'm not sure exactly how they phrased it, but yes, they tried to get her back, she wouldn't come back, and they ultimately did process the termination of employment, yes. Okay, I thought that's what you said in your brief was that she was terminated from job abandonment. Yes, yes, they terminated that relationship. And that was on July 25th. Correct, that was the date that they made that termination of employment effective, yes. Well, I just have two points that I'd like to make this morning, and the first is that I think that much of what we've heard from plaintiff's counsel isn't necessarily relevant, Your Honors, because what we've got here, Judge Newbicke granted summary judgment based on OSF's motion, and it dealt with the amended verified complaint. And the verified complaint is in the record, and you'll see paragraph 3, like we talked about, it expressly states that the plaintiff was terminated without cause. It's very clear. So we've got a verified amended complaint that just on its own space supports the summary judgment ruling. I know Mr. Williamson asked that you expand the retaliation tort. The Illinois Supreme Court has cautioned against that, and what we've got here are these narrow categories, and the web case articulates those. But the bottom line is that once she falls into that termination of employment bucket, retaliatory discharge is her cause of action there. And what we've got here, our analysis needs to be on the verified complaint. We've got a complaint the plaintiff's counsel did not opt to amend. They've never backed away from that statement, from that contention that, yes, she was terminated. And Judge Newbicke noted in his order, summary judgment, yep, at that stage still saying terminated. Mr. Williamson mentioned it again today. So we've got a plaintiff who's agreed throughout in pleadings that state that her employment was terminated. In spite of your answer that she wasn't, wasn't the answer that, no, she wasn't terminated? No, as I thought Justice McDade and I were just discussing, this employment relationship was terminated. It was absolutely severed. We processed that as of July 25th. What was the answer to the complaint, though? Did the answer to the complaint admit that she was terminated? No, the answer, what the allegation was, was that she was terminated without cause on June 18th. And the defendant denied that allegation because we don't feel that June 18th is the correct date for that. Okay, so the denial was with respect to the date and not the act of ending the employment. As I said, there is absolutely disagreement as to what the specific date is. There has never been any disagreement until the morning of the summary judgment hearing that this was a termination. Thank you for clarifying that. But I don't know that you even need to look farther than what you've got there in the verified complaint. If you wanted to, you'd certainly have company because Judge Dubicki took a look at that and said, well, even if she wanted to back away from that, let's say even if she wanted to file a second amended complaint, could she do that? And that's where these judicial admissions come into play here. And you can listen to Mr. Williamson talk about who intended what and what the conversations were. You can listen to me say the same thing. But I'd question why you'd want to do that because here we've got a document that very clearly sets forth what happened in the trial court and the positions that were taken and contentions that were made over this three-year period. And it wasn't written by me and it wasn't written by Mr. Williamson. It was written by Judge Dubicki. And what he's given everyone here is a four-page, very clear statement as to the various stages of this proceeding. And if you look through Judge Dubicki's order, these statements that she was terminated were very clear, they were very deliberate, and they're unequivocal. If you tick through, there's no spin, there's no agenda. The original complaint, she was terminated without cause. The agreed statement of the case, signed by the parties, it's read to the jury. She says, I was terminated. After the mistrial, when the plaintiff proposed a substitute statement of the case, it said, and this was drafted by plaintiff's counsel, this is something he asked, he wanted to have read to a jury. Plaintiff claims she was discharged. And OSF admits that the employment relationship ended. That was what Mr. Williamson asked to have read to the jury. So there again, these things, these are unequivocal. We've got it in the deposition, we've got it in the verified amended complaint, we've got it in the conversations and the letters that are going back and forth to OSF from the plaintiff. So there's no mistake here. There's no inadvertence. This was a deliberate course of action that they took. And the mere fact that these things are verified, amended complaints, there's case law out of this district that says, yes, those are binding judicial admissions. That's what the trial court picked up on, what he incorporated in the decision, and those are relevant and instructive here today. The last point that I'd like to make, and Mr. Williamson talked about various communications that went on between the parties and that this extended into the late summer and fall of 2008, and respectfully, Your Honors, that simply is not supported by the record. I think that if you look at the briefs and you look at the chronology and you look at the dates of each of those things that have been cited, even by plaintiff's counsel, there were no communications going on between these parties into the fall. It's just not supported. And I think if we're talking about the judicial admissions and plaintiff is trying to make an argument that these were just an honest mistake and we want a reverse course on these, I think you look at the plaintiff's own words and in the record there you have one of the letters, and I believe it was attached to a plaintiff's complaint as an exhibit. She writes, In order to clear up any confusion you may have, OSF, regarding our relationship, please review the following. And she goes on to state, I no longer have any working relationship with OSF. I no longer work for OSF. And OSF must honor the termination. And then we get the letter from her attorney. Also, it's there in the record. I believe it's at page 676. Plaintiff has accepted a new position in Yorkville. She will not be returning. So to say that this was a mistake, to say that all of a sudden we've got this ambiguity, just is not supported by the record. And I will also point out that I believe Mr. Williamson mentioned that even after OSF received that letter from her attorney saying that she had taken a new position in Yorkville and that she would not be returning to work, that there were still ongoing communications about what jobs the plaintiff might be able to perform at St. Francis. You will not find that in the record, Your Honor, because I have zero knowledge of that actually occurring. I just do point that out, that those conversations did not extend into the fall. So I think what we've got here, it's clear, it's deliberate, it's unequivocal. You cannot say that this is an honest mistake. Judge Dubicki looked at this. He saw this go on for three years, full understanding of exactly what the case is about and plaintiff's contentions. And I would just ask that you affirm the trial court's ruling awarding summary judgment in favor of OSF. Before you conclude, I do want to commend your strategy here today by allowing us to ask questions first, because we do prepare in advance and we do read the briefs. And as we prepare, the questions come up in our minds. And I thought it was an effective way to present the case because then the questions are answered and we're not interrupting your argument. So I commend you for a kind of unique approach that worked well for me today. Thank you very much. I'll speak only on my behalf. Thank you, Your Honor. Thank you. Just some brief comments. Justice McDade, you have commented on Attorney Newen's letter, essentially saying, is this just setting up a situation for job abandonment? If the court determines they're going to go the route of going through the second situation about the resignation, which I understand you have the right to do. The trial court didn't rule on that, but, of course, you could. I point out to you this. The restricted workers program is a temporary program only for workers on workers' compensation, employees on workers' compensation, who cannot return to their job at that time because of the residual effects of the workers' comp injury. So this, on the one sense, is not an offer of employment. It's directing her to go to a temporary job. And, in fact, Your Honor, at this point in time, she's no longer restricted. She's only restricted in May and June. That's the time where she couldn't lift heavy patients. By the time this letter is written in July 16 of 2008, she can go back to work and is applied to numerous jobs at OSF at the Peoria facility because she no longer has a restriction. And while we're talking about the so-called admissions, this is what the plaintiff is saying in her letter that's attached to the complaint. It doesn't appear that OSF has a necessary respect to apologize to me regarding their admitted error in terminating me. It is absolutely deplorable that you instead choose to order me to move back to Peoria for a temporary job after you terminated me. She knew it was a temporary job. She knew it was inapplicable. So Mr. Newlin has, in one sense, clearly indicated that her employment status hasn't terminated in July 16. On the other hand, you could interpret and say he's setting up a situation for job abandonment and she did abandon the job, but she did not, Your Honor. That's a temporary situation for workers who can't go back to their regular job. And that wasn't her situation. So I would only suggest that it would not be prudent to base this decision on something the trial court did not because the evidence, frankly, was not well enough developed. And it wouldn't be a justiciable conclusion in this case. Thank you very much. Thank you. We will be taking the matter under advisement and conferring with our respective colleague, Justice Holdridge, before rendering a decision. For now, we're going to stand in recess. Are we on time? Wow. For lunch. For a longer lunch hour than we normally enjoy. Thank you very much and safe travels home. Thank you.